[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Karen L. Lewis, commenced this CT Page 1362 action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable to this court August 23, 1994. She also seeks alimony, custody and support of the minor children, and other relief as on file.
The defendant husband admitted all of the allegations in the complaint in his answer. In his cross complaint, he has alleged the irretrievable breakdown of the parties' marriage and seeks joint legal custody of the parties' minor children, a fair and equitable division of personal property and other relief, as on file.
At the hearing, each party was represented by counsel, testified, submitted financial affidavits, written proposed orders and a child support guideline worksheet, and some wage records were introduced into evidence.
At trial, the parties agreed on an order of joint legal custody of their two minor children, primary physical custody to mother, and reasonable rights of visitation to father, substantially in accord with the plaintiff's proposed orders.
They also agreed that the mother would maintain her present employment-related health insurance for the children, and the parents would equally share the unreimbursed or uncovered health expenses for the children. In addition, father agreed to pay to mother $4.50 per week, which is one-half of the premium allocated to the children.
From the evidence, I find as follows:
The plaintiff wife, Karen L. Lewis, whose birth name was Karen Santangelo, married the defendant husband, Hubert Lewis, in New London, Connecticut, on February 24, 1989. She has resided continuously in this state for at least one year before the date of the complaint: August 3, 1994. The parties have only two minor children issue of the marriage: Nicole Angela Lewis, born August 24, 1992; and Lauren Kristy Lewis, born December 13, 1990. No other minor children were born to the wife since the date of marriage, and all statutory stays have expired. Neither party or the children are recipients of public assistance. The court has jurisdiction.
The wife is 30 years of age, a high school graduate CT Page 1363 and in good health. She has worked continuously for the past 14 years as a dietary aide in a local hospital. She now works a 30-hour, four-day week, 6:30 a.m. to 2:30 p. m., and earns $315[1]
per week gross, $225 per week net. She has life and health insurance and pension benefits associated with her employment, to which she contributes, however, her employer has been going through a downsizing period, and she is worried about her job security.
The husband is 29 years old, a high school graduate and in good health. For the past four years, he has been employed as a mail handler by the U.S. Postal Service. He earns $527 per week gross, $406 per week net, for regular time, and averages with Sunday premium pay, shift differential and overtime about $150 — $200 per week gross additional.
This marriage of almost six years' duration has largely disintegrated due to the actions of the husband, who took a different course. He stayed out late with friends. The couple's problems were aggravated in part because of their different shifts and the wife's rotating daily work schedule. The husband met another woman and began an affair with her. The couple separated in August, 1994, and it is clear that the marriage has irretrievably broken down. On the evidence, I find that the husband must bear a larger share of the responsibility for the destruction of the marriage.
Happily, the parties have worked out a cooperative parenting plan for the children, which involves the husband directly in their care and lives, and the parties are to be commended for this. By doing so, they are able to save considerable day care expense.
They have accumulated very modest assets during the marriage. These include their household furnishings and furniture, two vehicles, a small amount of cash on hand and in banks; $300 in savings bonds, life insurance cash values of $855, the husband's SSIP and thrift plans totalling $1,704 and wife's pension valued at $800. The husband also has a baseball card collection which he values at $1,000.
The mortgage on their major asset, the jointly-owned family dwelling, is substantially in arrears, and foreclosure looms. However, they believe they have worked out a `deed in lieu of foreclosure' with their lender which would leave the CT Page 1364 couple without liability for a deficiency.
The wife plans to vacate the house by March, 1995, and live with the children in an apartment owned by her mother.
The parties have equal employability; the husband has superior earnings and earning capacity and vocational skills than the wife, and thus has a greater opportunity than she has to acquire capital assets and income in the future.
The husband owes past due child support and alimony in the amount of $146 as of February 6, 1995, and I find an arrearage in that amount.
The husband has satisfactorily completed the Parenting Education Program; the wife is scheduled to do so. The order requiring her to do so shall not be merged into this decree.
The expenses shown on the wife's financial affidavit are overstated by about $50 per week.
The plaintiff suggests, in her child guidelines worksheet, that the presumptive amount that the husband should pay as child support should be $199 per week. The husband suggests that he should pay $149 per week plus thirty-seven (37%) percent of his net overtime pay. I agree with the defendant that the child support obligation suggested by the guidelines based on his regular weekly net income should be $149 per week. Section 46b-215a-1(11) of the child support and arrearage guidelines (eff. 6/1/94) provides that overtime pay shall be included in gross income for the purpose of a child support determination. The husband's overtime varies from pay period to pay period, and also appears to be seasonally higher, especially around the Christmas holiday.
Because of this variation, and the husband's opportunity for a supervisory job with no overtime, I agree with defendant's suggestion that the father pay thirty-seven (37%) percent of his net overtime income to the mother as additional child support.
The defendant testified that if the parties filed separate tax returns, with him getting the home mortgage interest and real estate tax deductions and the wife, as head of household, taking the children's dependency exemptions, they CT Page 1365 would obtain an aggregate net refund over tax liability of about $2,900. He further suggests they share such net refund equally. I find this suggestion to be fair and equitable.
I also note that the husband received a monetary settlement for personal injury of about $10,000 which was used to pay off the car loan on the wife's automobile, a down payment on the family home and family bills.
I have considered all of the criteria in General Statutes §§ 46b-81, 46b-82 and 46b-84 in the light of the evidence and findings. I have also considered the tax implications and consequences of the financial awards set forth.
Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown. Orders shall also enter as follows:
(1) Joint legal custody on the minor children is awarded to the parties, with primary physical custody and residence with the mother, reasonable rights of visitation and access with father, to include:
(a) every other weekend, Saturday, 6 a.m. to 10 p. m. and Sunday 6 a.m. to 2:45 p. m.;
(b) two non-consecutive days per week from 6 a.m. to 2:45 p. m.;
(c) overnight, holiday, summer vacation and other extended visitation as mutually agreed by the parties;
(d) neither party will consume alcohol while with the children;
(e) the mother shall complete the Parenting Education Program. See General Statutes § 46b-69b.
(2) The defendant father shall pay to the mother the sum of $153.50 per week as child support ($149 plus $4.50 health insurance premium), which together with the alimony hereafter ordered, shall be secured by immediate wage execution. As additional support, he shall pay to the mother promptly upon receipt by him, thirty-seven (37%) percent of his net overtime pay (or increase in net salary over $406 per week if he obtains CT Page 1366 the supervisory job), as that sum is defined and determined by the child support guidelines. He shall on April 1, 1995, and quarterly thereafter, provide plaintiff with a copy of his wage and earning statements. The parents shall be obligated to support the children until their 19th birthday, or high school graduation, whichever first occurs, pursuant to General Statutes § 46b-84(b).
(3) The plaintiff wife shall continue to maintain the children on her job-related health insurance coverage. The parties shall equally share any unreimbursed or uncovered health expenses pertaining to the children. An order pursuant to General Statutes § 46b-84(d) shall enter.
(4) The plaintiff wife shall have the children as dependency exemptions for 1994. In succeeding years, the parties shall each take one child; when the older child may no longer be claimed, they shall take the younger child in alternating years.
(5) The husband shall pay to the wife as periodic alimony the sum of $35 per week for a period of four years. Said sum shall not be modifiable as to duration and shall terminate upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86(b). By that time, both children shall be in school full time, and the wife's day care expenses shall abate, and she should be, with husband's child support, self sufficient.
(6) The parties shall cooperate in filing state and federal income tax returns for 1994; the home mortgage expenses and real estate shall be allocated to husband, the wife shall have the children as dependency exemptions. The net aggregate refund shall be divided equally.
(7) The arrearage of $146 shall be paid by the husband to the wife upon receipt of his portion of the income tax refund described in paragraph (6) above. In the event no refund is received by May 1, 1995, he shall pay her the arrearage at the rate of $25 per week, until paid.
(8) The wife shall take and have her 1989 Chevrolet motor vehicle, the tangible personal property now in her possession, her checking and savings accounts; her life insurance cash value and her pension free and clear of husband's CT Page 1367 claims.
(9) The husband shall take and have, free and clear of wife's claims, his 1987 Nissan automobile, subject to the loan thereon; his savings bonds; the personal property now in his possession; his baseball card collection; his thrift plan and savings account; and his SSIP, excepting that by Qualified Domestic Relations Order (QDRO) there is transferred to and vested in wife the sum of $1,000 thereof. The court retains jurisdiction over this matter until accomplished.
(10) Each shall pay the liabilities shown on their respective financial affidavits; the husband shall pay the J. C. Penney obligation and the car loan, and save the wife harmless. Each shall be equally obligated for the home mortgage deficiency, if any.
(11) Each shall pay their own attorney's fees;
(12) Each shall maintain the children as irrevocable beneficiaries until the older child reaches age 19, then the younger child shall be sole beneficiary, on the life insurance policies shown on their financial affidavits:
Wife: Warner, face amount $ 45,900 L M Hospital, face amount $ 5,000
Husband: Warner, face amount $ 68,700 Job-related, face amount $175,000
If the parties agree in writing to name the children as irrevocable beneficiaries in equal shares until the youngest child reaches age 19 or older, then this order may be substituted for the order above entered. Each shall execute and deliver an authorization to said insurance companies in favor of the other, so that the other may, from time to time, determine the status of said policies.
(13) The wife's birth name of Santangelo is restored to her.
(14) All documents necessary or incidental to the effectuation of the orders herein shall be completed and exchanged within thirty (30) days hereof. CT Page 1368
Teller, J.